# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff

vs.

BENJAMIN MICHAEL JONES,

    Defendant.
_____/

Case No. 23-20041
HON. JUDITH E. LEVY

## SENTENCING MEMORANDUM ON BEHALF OF BENJAMIN MICHAEL JONES

### I. Introduction

Counsel is asking for an unusual sentence to be imposed in this unusual case. Both incarceration and supervised release would be greater than necessary to meet the purposes of sentencing under 18 U.S.C. § 3553. A sentence in this case should be limited to the $100 special assessment fine he must pay. If the Court feels compelled to impose a higher fine, counsel asks that the Court not exceed $500. Mr. Jones's now lifelong status as a felon[1] is sufficient punishment in this case, especially considering the nature and circumstances and his successful performance on pretrial release since June 2022.

---

[1] Without his conviction in this case, Mr. Jones would have been able to expunge his felon status under Michigan state law.

1

## II. Sentencing Guidelines

According to the presentence report, Mr. Jones's guidelines range is 0 to 6 months. Mr. Jones acknowledges that his plea agreement indicates there are no applicable guidelines range and that the Court should be guided by 18 U.S.C. § 3553(a) when fashioning a sentence in this case. Mr. Jones stands by the obligations of his agreement, however, he sees no technical error in the way Probation scored the guidelines.

## III. Consideration of § 3553(a) Factors

Section 3553(a) directs courts to impose a sentence that is sufficient, *but not greater than necessary,* to comply with the purposes of sentencing. Those purposes include: (1) reflecting the seriousness of the offense; (2) promoting respect for the law and providing just punishment; (3) protecting the public; (4) deterrence; and (5) providing the defendant with educational or vocational training, medical care or other correctional treatment in the most effective manner. Under § 3553(a), courts are further directed to consider other factors: (1) nature and circumstances of the offense and history and characteristics of the defendant; (2) need for the sentence imposed; (3) kinds of sentences available; (4) the sentencing guidelines range and any pertinent policy statement; (5) the need to avoid unwarranted sentence disparities among defendants with similar records and criminal conduct; and the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1)-(7). When a guideline "does not exemplify the Commission's exercise of its characteristic institutional role," because the Commission "did not take

2

account of 'empirical data and national experience,'" the sentencing court is free to conclude that the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough v. United States*, 552 U.S. 85, 96, 109-10 (2007).

*Nature and Circumstances.* Regardless of whether the Court finds that there are applicable guidelines in this case, a fine would be the most appropriate sentence for Mr. Jones's conduct based on his characteristics. Although this offense was nonviolent, its seriousness is readily apparent to Mr. Jones. Mr. Jones recognizes that he exercised poor judgment, and he is remorseful.

*History and Characteristics.* Mr. Jones's parents raised him together until they separated when he was when he was twelve years old. Upon their separation, Mr. Jones lived with his mother, who was only fifteen years old when he was born. Mr. Jones's mother was transitioning into a single parent role, and as such, was not home often. Mr. Jones felt he had to grow up fast and look after himself. Resultingly, by fifteen Mr. Jones had begun working to sustain himself earning approximately $4,000 per month writing poetry, and eventually moved into his own apartment the next year.

Mr. Jones maintained a loving relationship with his father, who passed away suddenly in 2013 from a work accident, despite his father battling a heroin addiction for several years. Mr. Jones recalls fishing with his father and accompanying him to his construction job on several occasions where he was able to develop numerous skills and learn the importance of a strong work ethic.

3

Although Mr. Jones experienced notable hardships throughout his adolescence, his Adverse Childhood Experiences (ACE) assessment resulted in a score of two out of ten indicating that he is at low risk for negative behavior and health outcomes.

Mr. Jones has a stable support system through his fiancée, Kaia Karamoko. His fiancée is an elementary school teacher in Detroit. They have two happy, healthy children together ages nine and three. Both children suffer from fibro seizures which are seizures caused by high body temperatures that require moderate monitoring. They reside in a four-bedroom single-family home in Detroit which Mr. Jones owns.

Mr. Jones is a highly ambitious individual. Despite dropping out of high school in his senior year, he still aimed to pursue a formal education and successfully graduated from Trombley Adult Education Center in Detroit in 2004. He currently operates several businesses in various areas. He is the owner and operator of a limited liability entertainment company, a private fence installation company, and co-operator with his fiancée of a tutoring program for children.

*A fine is the appropriate sentence.* Taking in tandem his assets, debts, and income his monthly expenses are approximately $6,400 while his monthly cash flow is approximately $2,170. This evinces why a fine is the most appropriate sentence for Mr. Jones in this matter.

Mr. Jones – who would have been eligible for expungement of his Michigan convictions – will now be a felon for the rest of his life following this case. Being branded a felon has a permanent and detrimental impact on anyone's life. In addition

to the obvious struggles that felons have with stigma and the difficulties finding employment, a felony conviction would present several other horrible collateral consequences for the rest of his life.

The Brennan Center for Justice recently published a research paper on the economic impact of felony convictions. Terry-Ann Craigie, Ames Grawert, and Cameron Kimble. *Conviction, Imprisonment, and Lost Earnings*, Brennan Center for Justice, September 15, 2020.[2] The research demonstrates that the mere existence of a felony conviction reduced the average annual earnings of an offender by 21.7%. *Conviction, Imprisonment, and Lost Earnings*, at Table 3, Page 15. These lost earnings are likely traced to employer background checks and licensing agencies requiring "good moral character" even for traditional blue-collar jobs that do not require access to others financial information. For example, Michigan requires good moral character for barbers and cosmetologists. While a criminal conviction is not *proof* of lack of good moral character, it can be used as *evidence* of lack of good moral character. M.C.L. § 338.41 *et. seq*. Many employment applications ask an applicant about felony convictions. While many states have "ban the box" laws prohibiting questions about prior convictions in many situations, Michigan's ban the box law applies only to public employers, not private hiring.

---

[2] Available at: https://perma.cc/TYL4-BXAZ

5

The economic impact of a conviction deepens when a person receives a custodial sentence. Post-release, formerly imprisoned individuals make, on average, 51.7% less than comparable peers. *Conviction, Imprisonment, and Lost Earnings*, at Table 3, Page 15.

***Further supervision is unnecessary.*** The Supreme Court has held that "supervised release is intended to offer a level of support and assistance—a level substantially lower than that provided in prison—as a person re-enters society and attempts to transition back in to a productive, law-abiding life." *United States v. Johnson,* 529 U.S. 53; 120 S Ct 1114; 146 L Ed 2d 39 (2000). Mr. Jones was not detained for this offense therefore he has no transitionary needs. He has demonstrated through his compliance on pretrial release that he is already living a law-abiding life. The Supreme Court is clear that, "Supervised release is not a punitive measure, but a rehabilitative one." *Johnson,* 529 U.S. at 59. Punitive consequences for Mr. Jones's offense have been levied through his felony conviction. There is no indication that Mr. Jones requires rehabilitative assistance as a result of this offense. Supervised release in this case would serve no purpose for the court, the public, or Mr. Jones. This was a non-violent offense and since then Mr. Jones has had two consecutive years free of violent conduct or significant public harm. There is no indication of any public safety concern. Further supervision would be a greater than necessary sentence. The public and Mr. Jones would be best served by allowing him to continue to maintain his stable, law-abiding life.

Mr. Jones has been out on bond for this case since 2022. Mr. Jones has a minimal criminal record. He has never been incarcerated. His adjustment to pretrial release has

6

been impressive. He has maintained his businesses. He maintains contact with his supervising officer and reports as directed. He has continuously tested negative for controlled substances, except for his initial screen in 2022.

He has had two encounters with police since this incident. Mr. Jones timely reported these encounters to his supervising pretrial officer. He appeared before the Court for a bond review hearing in July 2023, after which the Court continued bond with added conditions. Mr. Jones has had no issues since this time.

As Judge James G. Carr for the Northern District of Ohio explains in *Why Pretrial Release Really Matters*, "…federal defendants, if not detained, have the opportunity to stand on the best, most upright footing of all when before the judge for sentencing." *Federal Sentencing Reporter,* Vol. 29, No. 4, pp. 218. Mr. Jones superseded this opportunity to stand on the most upright footing. His positive adjustment to supervision has allowed Mr. Jones to demonstrate to the Court that he is rehabilitated and that his felony conviction will serve as adequate punishment for his conduct. Judge Carr posits that "any defendant, regardless of charged crime, criminal history, or guideline range, who can show a court… that he or she can be law-abiding offers the court the best of all possible records and reasons to consider leniency." *Id.* at pp. 218. To incarcerate or formally supervise him at this time would only serve to derail the showing Mr. Jones has made of his law-abiding capability. A proportional fine is the only sentence sufficient but not greater than necessary to meet the goals of 18 U.S.C. § 3553(a).

### III. Conclusion

Neither incarceration nor court supervision is the answer for Mr. Jones. The conduct he engaged in that led to his conviction in this case is inconsistent with his overall character as an entrepreneur, dedicated father, and upstanding community member. Incarcerating him at this time will disrupt his life in a negative way, and supervision will be nothing but a punishment that is more excessive than necessary to meet the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER OFFICE**

s/ Casey Swanson
s/ Celeste Kinney
Counsel for Mr. Jones
613 Abbott Street, Ste. 500
Detroit, MI  48226
313-967-5542
Casey_Swanson@fd.org

Date: February 20, 2024